CHARLES P. EDWARDS AND OTHERS *vs.* JAMES T. DERRICKSON AND OTHERS.

1. Where a debtor, owing several debts to the same creditor, omits to apply the payment, at or before the time of making it, the creditor may make the appropriation. The right of appropriation is not taken away or impaired by any express provision of the lien law, nor by the effect of the appropriation upon the interests of the land owner.

2. In an action on a lien claim, the declarations of the builder are competent evidence to prove the contract under which the materials were furnished or work done ; and where the builder was the owner of the premises at the time the declarations were made, such declarations are competent evidence to prove the contract, and will bind the owner in a suit where a subsequent owner is a party.

3. Where a building contract is entire, the work cannot be considered done, nor the materials furnished, until the contract is executed ; and a lien can be filed at any time within one year from the time the work was finished.

4. In a lien filed for work done or materials furnished by contract, it is not necessary to state the particulars of such labor or materials ; if the claim shows the work done the time it was executed, that it was done by contract, the price stipulated and the amount due to the claimant, it is sufficient.

5. A flume constructed of wood, and leading the water from the dam to the wheel inside the mill, is a fixture within the meaning of the mechanics' lien law, for which a lien may be enforced.

6. A lien claim filed described the property as the Phœnix mill, together with the lot and curtilage whereon the same stood, which was designated as "all that tract of land known as the Phœnix mill property," and was described by metes and bounds ; the number of acres was not stated in the lien, but appeared by the evidence to be about fifty-three : there were, besides the mill, two dwelling houses on the tract, which were usually occupied by persons employed about the mill ; with one house was enclosed seven or eight acres of land ; the residue of the land was unenclosed and was chiefly open, broken, back land ; for thirty years the whole had been known and conveyed as one property. *Held*, that the whole tract was properly included in the lot and curtilage whereon the building was erected and was liable to the lien.

7. If a lien claim describe an unnecessary quantity of land, and more than is included in the lot and curtilage upon which the building is erected, it is not fatal to the claim ; but the lien will be held good upon what properly belongs to the lot and curtilage, and is necessary to the enjoyment of the premises.

8. If it appear to the court that the claim includes more land than by

law can be covered by the lien, it is no reason for dismissing the suit; it should be left to the jury to say how much is covered by the lien, and judgment should be given accordingly.—Per VREEDENBURGH, J.

9. Where the title to property upon which a lien is claimed is changed between the time of making the contract, or doing the work, and the time of filing the lien, the person owning the property when the lien is filed is the proper one to be made a party as owner.

10. Taking notes for a lien claim is no abandonment of the lien security; and if the notes are not paid at maturity the claimant may enforce his lien in the same manner as if the notes had never been given.

In case on lien claim, certified from the Morris circuit for the advisory opinion of this court. The facts fully appear in the opinions delivered.

Argued before the CHIEF JUSTICE and Justices VAN DYKE and VREEDENBURGH.

*Scofield* and *W. L. Dayton*, for plaintiffs.

*J. F. Randolph*, for defendants.

VAN DYKE, J. This is a suit, brought in the Circuit Court of the county of Morris, to enforce a lien claim on a certain mill property, there situate, for work and labor and materials furnished in making certain additions or repairs to the said mill. The work was done by contract, and was finished on the 25th of February, 1857. The lien claim was filed on the 31st of December, 1857, and the suit commenced on the 14th of January, 1858. The verdict was rendered, by requirement, for $1921, and must be considered a correct verdict, unless some one or more of the exceptions taken at the time are to be considered as fatal to it. The case, with the exceptions, is certified to this court, for its advisory opinion thereon, by the judge who tried the cause.

The act under which these proceedings occur, as well as those of a similar kind which preceded it, seem to have been favorites of the legislature, as is manifest from the repeated efforts made by them, through supplements

Edwards v. Derrickson.

as well as new acts, to obtain one that was perfect and available; and as it intends to make provision to aid a large class of industrious and laborious claimants in the collection of their claims for most meritorious services and outlays, we are bound, I think, to give it a liberal construction, so as to enable it, as far as possible, to carry out and accomplish the great object which the legislature had in view, and not to permit mere technical and unsubstantial objections ·or errors to annul the law and defeat that object.

The first objection taken at the trial was to the reception in evidence of the lien claim as filed—1, because it did not set forth with sufficient particularity the time or times when the work was done and the materials furnished; and 2, because it contained a claim for the work and materials for a flume. The objection was overruled by the judge, and I think properly.

The statute requires the claim filed to contain four different matters—1, a description of the building and the lot or curtilage on which lien is claimed, and its situation sufficient to identify the same; 2, the name of the owner or owners of the land, or the estate therein; 3, the name of the persons who contracted the debt, or for whom, or at whose request, the work was done or the materials were furnished; 4, a bill of particulars exhibiting the amount and kind of labor performed, with the materials furnished, and the prices at which, and the times when the same was performed and furnished, with credits, &c. The first of these requirements seems to have been properly inserted in the claim filed, as no objection is taken to them. In the clause of the section requiring the bill of particulars, it is provided that when the work or materials, or both, are furnished by contract, the claimant need not state the particulars of such labor or materials further than that by stating generally that certain work, therein stated, was done by contract, at a price mentioned.

The claim states that the work was done and materials

D*

furnished by contract. It states what the work was that was done, the substantial or material features of the contract, the price at which it was done, the credits to which the defendants were entitled, and the balance due from them to the plaintiffs on that contract. This is all the law requires, and in this respect I can see no deficiency in the claim as filed.

But the claim was also objected to because it contained a claim for work and materials furnished for a flume. If the charge for the flume were in the claim wrongly, it could not impair it as the legal evidence to prove the other matters contained in it, and it was therefore properly received ; but as this flume is made a matter of separate exception afterwards, it may as well be considered here. This flume is built, or constructed, of timber and plank, is partly inside, and partly outside the building. It connects itself immediately with the water wheel, and is absolutely indispensable to the motion of the mill. According to the arrangements of this mill, its machinery could no more operate without this flume to convey the water on the wheel than the human body could respire without the means of communicating air to the lungs. It is therefore just as much a constructed, necessary, and permanent " fixture " in the mill, and for aught that I can see as much subject to a lien as the water wheel itself.

Objection was also taken to the reception in evidence of the declarations of Derrickson, one of the defendants. This objection was properly overruled by the court. He was certainly the builder and the person who contracted for the work and materials. He was one of the persons, at least, against whom a verdict and judgment were sought, and was properly, if not necessarily, made a defendant, and being properly a defendant, his declarations were legal evidence against himself certainly ; and as they were made at a time when he owned and occupied the premises in question, they may be legally received against those who hold under him.

Objection was also raised that a part of the claim was for labor done and materials furnished more than a year before the filing of the lien claim. If this objection applies to the work done and materials furnished under the contract, I think it cannot be sustained. The contract was an entirety, to be paid for in a round sum of $4000. No account was kept of the time or times when the work was done or the materials furnished, for no such account was required or needed, and the work and materials were not charged for until the work was finished, and in contemplation of law it is presumed to have been done at that time, and the lien dates from that period. If this be so, then no part of the work and materials can be considered as having been done or furnished more than a year before the filing of the lien claim. If, on the contrary, the contract is not to be considered as an entirety, but the work and materials are to be considered as having been done and furnished at different periods and by piecemeal, the objection seems to be equally untenable. We have no means of knowing exactly when the work was done and materials furnished. It was all accomplished in a little over four months, ending on the 25th of February, 1857, about two of which months were within the year next preceding the filing of the lien claim. This suit is in fact brought to recover a mere balance due on the contract, much the larger portion having been paid; and if the entirety of the contract is not to be allowed, then the plaintiffs have the right to insist that this last part of the money due shall be considered as due for the last work done and the last materials furnished. And if, without any evidence to guide us one way or the other, we distribute the work and materials furnished, when, &c., equally over the whole four months and upwards during which the work and materials were being furnished, it will appear that the amount due is no more than enough to pay for the work done and materials furnished during the last two months of the time, and which were within the year next preceding the filing of the lien claim.

If the objection is meant to apply more particularly to the sum of $114.70, which seems to have been separately treated, but for what reason we do not know, the answer is sufficient, for that amount was, according to the evidence, for work done within the contract, and was paid for out of the moneys paid by the defendant on the contract.

Again, it is objected that this lien is bad because it claims a lien on more land than is subject to any rightful lien of the plaintiffs. Suppose it be true that the plaintiffs, in filing their lien claim, have embraced in it more land than by a reasonable construction of the act they would be entitled to, does this absolutely destroy all their right of lien in every part of it, buildings and all? If this be so, the lien law rests on a very uncertain basis. It is in fact rather a trap than a security for a just debt, for as we have no way whatever for ascertaining the precise amount of land which a court or jury might happen to think should go with the building and be affected by the lien, if the claimant, from this or any other cause, should be so unfortunate as to make his claim a little too large, although no one could by possibility be injured by it, his whole lien claim is absolutely gone, notwithstanding the claimant furnished his labor and materials, to the amount of thousands, on the faith of this very lien alone, but of which, in consequence of this mistake, he is wholly deprived, and his claim wholly lost. I should be extremely reluctant to believe this. The quantity of land made subject to lien by the act is not merely the land on which the building is actually erected; this is included in express terms, but in addition to this the lot or curtilage on which the building is erected is also subjected to the lien. Now who can tell us the size of either a lot or a curtilage? There are no dimensions known to the lien claimant, or to any one else, for either a lot or a curtilage, any more than there is for a farm or tract—either may be a very small thing, and either may be a large one. One of the definitions of

curtilage is, a *field* next to and belonging to a messuage, a field being as uncertain in its size as any other portion of land. It is in one place called " the world. ' A curtilage seems to connect itself with buildings or messuages, and means the grounds which properly appertain to them, whether they be enclosed within one hundred feet square in a city, or whether they are enclosed within the court, grounds, or park attached to and appertaining to a country seat, whether the contents be two acres, ten acres, or one hundred acres. The question is not so much the size of the curtilage as whether it is, and always has been, considered, treated, and known as one entire parcel, lying together, sold together, surveyed together, occupied together by its different owners, its metes and bounds known to all, and always recognized and treated as connecting itself immediately with a farming establishment, a manufacturing establishment, a pleasure or other establishment. The word lot is, perhaps, still more indefinite in its dimensions. Its proper meaning, when applied to real estate, is a portion of land that has been set off or allotted, whether great or small, but in common use it means simply a piece, parcel, or tract of land, without regard to size. It does not necessarily connect itself with buildings, but may be anywhere on the earth's surface. It may be a small thing or a large one ; it may be a town lot, a wood lot, or a mill lot; it may contain one acre, two acres, fifty acres, and who shall say that, as a matter of law, a lot of land shall not or cannot contain one hundred acres or more? Here, too, the question is not so much the size of the lot or parcel of land, as whether it is one single parcel lying together, known as one tract, bought and sold as such, its metes and bounds generally known, and as being the tract, lot, or parcel of land which the parties naturally understood as those which would appertain to or be connected with the building or buildings after they should be erected. This is what is meant by the law when it gives the contractor a lien on the build-

ing and the lot or curtilage on which it is erected, and when the lot has been repeatedly sold and bought, and the owners always recognizing one set of metes and bounds, and never making any others, the claimant may adopt them in filing his lien, and is not compelled, when doing so, to cause a new survey to be made within narrower limits, which no one recognizes, and be subjected at that to the loss of his entire lien if he should happen to include ten acres in his survey, and the court should chance to think that he should not have more than eight. Surely this cannot be the law. Nor can I see any serious difficulty to grow out of including in the lien claim more land than is actually necessary to satisfy the debt. The law certainly does intend that land enough shall be included, if there be enough in the lot, to satisfy the entire expense of the building. Who can tell, under all circumstances, how much this will require? and why should the contractor, when there is land enough to secure his claim, and which the lien subjects to it, be compelled to abridge the quantity, and thereby lose a portion of his security and also a portion of his debt?

We can all readily see that a building may be erected at such expense, and in such a place, as that, it it has to be sold for that purpose, it will not pay half of the claim. In such case, if the land should be poor, it may take a large quantity of it to pay the claim, and in such case the claimant should not be compelled, before he can possibly know what the result is to be in this respect, to limit his security to a lot of five, ten, twenty, or fifty acres. It does not follow that because the lien is on a large tract that it must of necessity all be sold. This lien is just like any other lien—all that is necessary to do is to sell enough to pay the claim. A mortgage or ordinary judgment is a lien, but in enforcing them by a sale, the sheriff can be, and generally is, restricted to sell so much only as is necessary to pay the debt; and whether at law or in equity, there is but little difficulty in adjusting rival liens; and

the act under which these proceedings take place, expressly directs the sheriff or other officer having the special *fieri facias* for that purpose, to "advertise, sell, and convey said buildings and lot in the same manner as directed by law in case of lands levied upon for debt." And in all such cases, if *part* of the lands levied on are sufficient to pay the debt, it is the right of the defendant to elect what part shall be first sold. *Nixon's Dig.* 723, § 7. This view of the law has received judicial sanction in this state. In case of *Van Duyne* v. *Van Nest*, 1 *Halst. Ch.* 491, the Chancellor held, in a case of conflicting liens, that a lien of this description should be broad enough and cover land enough to satisfy the claim. This decision was made, too, under a statute that, in terms, subjected no land to the lien except that on which the building was erected. The additions of curtilage or lot were added afterwards. This decision, it seems to me, was perfectly just. It was only carrying out what the law clearly intended; but if there could be doubt about it under that statute, there can be none, I think, under the present one. The decision has not been since reversed, but has been recognised as correct in principle, and has been practised under up to the present time.

But have the plaintiffs in this case in fact improperly described the premises by claiming a lien on too much land? The lands claimed as subject to the lien are minutely described by metes and bounds, and although the quantity is not given, yet they are so described by courses and distances as that the amount can easily be ascertained, and by a computation the tract or parcel described is found to contain a fraction over fifty-three acres. It has remained in substantially the same condition for a large number of years. It has been several times transferred, and always by the same description. It has, time out of mind almost, been recognised by the neighbors and others as the piece or parcel of land connected with the Phœnix mill, and as being the lot and parcel of land of which the

Phœnix mill property was composed. Now who can say judicially, that in describing the whole well known and clearly defined fifty-three acres, and claiming a lien upon it, the plaintiffs have committed an error fatal to their security? Who can say how much of that lot or tract the plaintiffs, in filing their lien claim, ought to have excluded from it? Can one say, as a matter of law, they should have excluded any of it? How do we know that the whole of this land was not necessary to the proper and advantageous use of the mill? Who can tell how much of it is made up of public road and grounds for the public to use? Who can tell how much of it is made up of the pond and its appendages and appurtenances, its inlets and outlets and right of overflow, its room for head and tail race, and the like? The witness, who has known the property for thirty years, says that he never knew "that any part of the tract was used separately from the mill." The inference, then, fairly is sustained by evidence, and contradicted by none, that the exclusion of a single acre from the tract would impair the complete use of the mill, and that it has no land attached to it that is not necessary for that purpose. If these things be so, then the land described is in truth and in fact the very curtilage or lot belonging to the mill, and on which the same was erected, in the very language, meaning, and intent of our statute.

I think, therefore, that the describing an unnecessary quantity of land in a lien claim is no fatal objection to the enforcement of the lien against the part that is properly embraced, and on which the lien clearly does attach; and if such description would be fatal to the claim, the rule certainly cannot apply to this case, where the claim simply describes the curtilage or lot on which the building is erected, which appertains immediately to the mill or building, and is necessary and used for its proper enjoyment. To hold such a description to be bad under the circumstances of this case, where it could not well have

been otherwise, is simply to annul the law and destroy a meritorous vested right, without any good or sufficient reason for it.

Again, it is objected that the making of Seymour and Sage, defendants in this suit is fatal to it, the reason for such fatality being that they were not the owners at the time of doing the work and furnishing materials, but became the owners afterwards and before the lien claim was filed. This objection would seem to be well taken, if a builder and owner can destroy the lien contemplated by the act, by selling or encumbering the property after the work is done and the materials are furnished, but before the lien claim is filed. Can he do this? I will not discuss this question, as it has not been raised, and to admit it is to concede the law itself to be powerless nonsense. I can make no such concession, and will therefore proceed to inquire why the making defendants of Seymour and Sage destroys this suit. I cannot see why the proceeding is not in exact accordance with the statute. Prior to filing the lien claim, no writing whatever is necessary; but in filing the claim, which may be done at any time within a year after the work and materials furnished, the law expressly requires it to contain, among others, two different things provided for in two separate and different clauses of the section. One is the name of the builder or person who contracted the debt, or for whom or at whose request the labor was performed or the materials furnished, and the other is the name of the owner or owners of the land on which the lien is claimed. The following section requires these two things to be entered distinctly and separately in a book, to be kept for that purpose by the clerk; and the next section declares that when any lien has been thus created, it may be enforced by suit in the Circuit court of the county, which suit shall be commenced by summons against the builder and owner of the land and building, prescribing the form of the summons, showing that where the builder, or person contracting the debt, is a different

person from the owner of the land, both names must be inserted. They must both be inserted in the lien claim; they must both be entered in the clerk's book, and both must be inserted in the summons, and both made defendants. No other way but this can possibly be lawful. Does the law, then, in its unmistakable requirement, that the name of the owner of the land shall be inserted in all these instances, mean that the name of any other person not the owner may be used for that purpose? Surely not. Now, when this lien claim was filed, Seymour and Sage, and no one else, were the owners of this land. When the entry required by the act was made in the clerk's book, they, and no one else, were the owners of this land; and when the suit was commenced, when the summons was issued, and the declaration filed, Seymour and Sage, and no one else, were the owners of this land, and so remained at the time of the trial. How is it possible, then, that these plaintiffs could have correctly managed their lien, and correctly commenced their suit, if they had disregarded these plain injunctions of the law, and excluded Seymour and Sage from the suit? How else were they to find out? How else could they legally learn that proceedings were instituted which were to take away from them, perhaps, their property? The statute provides for a defence to be made by the owner of the land as well as by the builder, but how could they in this, or any other case, make defence, unless they are made parties to the suit? They were the only persons, except the other parties, interested in the question of the lien, and the whole reason of the thing, as well as the legal injunction, requires the owners to be made parties throughout. This has been done, and it seems to me the proceeding could not have been correct if it had been otherwise. There is but one other mode of proceeding, I think, which the imagination could suggest, and that would be to treat Derrickson as the owner throughout. But to have had his name inserted in the lien claim, when it was filed and

entered in the book, when it was recorded, and continued in the summons, when the suit was commenced, as the owner of the land and building, would simply have been false and untrue from beginning to end, directly contrary to the plain requirements of the statute, destructive of the right of defence on the part of the real owners and parties in interest, and must have proved fatal to this lien if objection had been made. It is probably true that after the lien clause is once filed, and the entry made in the lien docket, correctly stating the names of the builder and owner of the land, the after proceeding must be continued in the same names, notwithstanding an after conveyance may be made, for the filing of the lien claim is in truth a commencement of the proceedings to secure and recover the money by a sale of the property ; and whoever takes a conveyance with an encumbrance on the premises after such filing and entry of the lien claim takes it at his peril, and with full legal notice not only of the extent of the lien, but that the preliminary steps have been taken to enforce it. He is entitled to no other notice, and if he defends at all, he must do so in the name of the person who was the party on record at the time he became the owner of or interested in the premises. At the time the contract was made, and the work done and materials furnished, Derrickson was the owner, and through him the lien was properly created, but when it became necessary to file the said claim he had parted with the land. He was no longer the owner. The fact then was, and the public records of the courts showed it, that other persons had become the owners, and the plaintiffs were bound to take notice of the fact and treat them accordingly, although they were themselves no party to that transfer. The persons who took that transfer, although they were bound at the time to know that the land was subject to the lien, for the new erections had just been put there, yet they had no notice, from the record or otherwise that we know of, that proceedings would be insti-

tuted to enforce that lien; and when such proceedings were commenced by filing the lien claim, and prosecuting it to judgment, it was not only right but necessary that they should be made parties, and have the notice or summons served on them. All this the plaintiffs have done, and, as I think, properly. There is no other way in which it could have been properly done; and if it is not right in its present form, it must be because the person who is builder and owner at the time when the contract is made, and the work done and materials furnished, may wholly defeat the lien, in all cases, by a transfer of the premises between the doing of the work, &c., and the filing of the lien claim, which he certainly cannot be permitted to do.

In this case all the parties in interest are before the court. The builder and contractor are here; the person who was the owner when the contract was made, and when the work was done and materials furnished, is here, and the persons who were the owners in fact at the time of filing the claim and at time of trial are here; all have a full opportunity of defence, with no just cause of complaint anywhere.

The plain meaning of the statute is, that the claimant shall have a remedy against the person who employed him to do the work or to furnish the materials, termed the builder, and also against the premises themselves, through the owner thereof, whether he be the same or a different person; but in all such cases both persons, if more than one, must be made defendants.

It is suggested, however, that if the joining of Seymour and Sage as parties in interest was not fatal to the suit, still that they ought not to have been styled "owners," for that the person who contracted the debt, and had the building erected, if the owner at that time, must be continued and styled as owner through all the after proceedings which may take place for the enforcement of the lien, although he may have parted with all his interest in the premises, as well as in the question, long before the lien

was filed, and long before it was necessary to file it; and that although in this case the same person, Derrickson, who caused the work to be done, and then transferred the property before the filing of the lien, is made a defendant throughout, and is regularly before the court, yet that he is therein only styled "the builder," and not "the owner," and that there is some fatality about the proceeding for this reason. It might be, perhaps, a sufficient answer to this objection to say that there is no such question before us. There was no such question raised, decided, or excepted to at the trial, and no such can be properly before this court. The question, distinctly taken and reduced to writing, was, "because the defendants, Seymour and Sage, were improperly joined in the action." Our opinion is asked on the questions submitted, and on nothing else. But if the question is properly before us, can it be one of serious difficulty? If the parties are in fact properly before us, but incorrectly designated or described, can there be any difficulty under the very broad authority given in our act to amend these proceedings, if any amendment be necessary extending such amendment to the lien claim itself, the making and filing of which was the first step in the process of enforcing the lien by a sale of the premises?

It is supposed that the sheriff's deed conveys the title which the *owner* had in the land at the time of the commencement of the building; and if Seymour and Sage are to be considered the owners, then, as they had no title at all at the commencement of the building, the purchaser taking their title would take no title at all. But the statute does not confine the title of the owner to the point of time when the building was commenced, but not only such title as the owner had at that time, but that which he had at any time afterwards, and within a year before the filing of the lien claim. Now Seymour and Sage, who are treated as the owners, were in fact the owners of the premises nearly six months before the filing of the lien

E*

claim, and nearly six months of the year next preceding the filing of the claim, so that Seymour and Sage were just as much the owners within the time mentioned by the statute as Derrickson, and the title derived through them, as the owners, is just as good as if derived from him, except only the possibility that Derrickson might have encumbered the premises between the commencement of the erections and his transfer to Seymour and Sage. But there is no pretence of this, nor is there any such question in this case requiring our decision ; and the most that can fairly be said of it is, that it is a matter of which the claimant must take the risk, if any there be, but not one for which the court should unnecessarily undertake to punish him.

Something is said, in the state of the case, about the taking of notes, and the passing of them away, being an extinguishment of the lien. Notes were taken for part of the unpaid balance. This is no abandonment of the security or lien. It was only giving to Derrickson a longer time in which to pay the money, at his request, it is to be presumed. They took notes which enabled them to raise money for the time being, but they had endorsed the notes, and become responsible to the holder for their payment. They were not paid at maturity by the drawer, and the plaintiffs took them up. They were cancelled at the trial, in the presence of the court, and the parties stand the same as if they had never been given.

I think, therefore, that the verdict is right, and that the Circuit Court be advised to order that judgment be entered upon it.

VREDENBURGH, J. This is a case certified to us from the Morris circuit. After the evidence had been gone through with, the state of the case reads as follows : " In this stage of the case it was agreed by the parties that a verdict should be taken for the plaintiffs for the amount claimed by them, making $1921, and that all the questions of law raised during the trial should be reserved for

the opinion of the Supreme Court at bar, and that said verdict should be subject to the opinion of said court on the points so reserved, and be altered accordingly, as against the defendants, or either of them."

We must therefore look into other parts of the case for the points reserved. The suit was brought to enforce a lien upon the Phœnix mill, and the lot or curtilage whereon the same stands.

The following is the bill of particulars upon which the claim is founded:

Feb. 25th, 1857.

James T. Derrickson to

Edwards & Clark, Dr.

To building water wheel, flume, and breast shaft, and furnishing materials (except the water wheel shaft) done by special contract for four thousand dollars, the said Edwards & Clark to have the old wheel, and Derrickson to find the new water wheel shaft,                                        $4000.00

Cr. Oct. 31, 1856, by one note,                 $1300
By paid on order of Woodruff,                     1000
                                                 ———————
                                                 $2300
Less by amount of work done by
   day's work and materials fur-
   nished to Derrickson to Dec. 1,
   1856, by Edwards & Clark,                      114.30
                                                 ———————
                                                           2185.30
                                                           ————————
Amount now due,                                            $1814.70

It appears, by the case, that when the work was done the property was owned by Derrickson, but that he conveyed it to Seymour and Sage, on the 6th of July, 1857.

The lien was filed on the 31st of December, 1857, and the summons issued on the 14th of January, 1858, against Derrickson and Seymour and Sage.

The first point made on the trial was against admitting the lien claim filed in evidence, which the defendants objected to upon two grounds.

*First.* Because it does not set forth with sufficient particularity the time and times when the work was done or the materials furnished.

The act (*Nix. Dig.* 488, § 2), provides that when the work is done by contract the statement need not state the particulars, but may state generally that certain work was done by contract at a price named. The evidence here shows that this was done by contract, and whether so or not it is as specific as the statute contemplates. In such cases the whole work and materials are in contemplation of law furnished when the contract is finished and the article delivered. This was done here within less than a year before the filing of the lien. *Bartlett* v. *Flanagan*, 19 *Penn. Rep.* 343.

*Second.* It was objected, in the second place, to the lien being read in evidence that it contained a claim for the work and materials for a flume, the law giving no lien therefor. Even if no lien could be sustained for a flume, yet it was no reason for excluding the whole lien. The court could only have overruled so much of the lien as referred to the flume. The motion, therefore, to overrule the whole lien was properly rejected by the court.

But I am of opinion that the flume was a proper object of a lien. The flume is a trunk, constructed of wood, leading the water from the dam to the wheel inside the mill.

By the act (*Nix. Dig.* 487, § 5), any addition erected to a former building, or any fixed machinery or gearing, or other fixtures for manufacturing purposes, shall be considered a building. Was this flume an addition or other fixture, within the meaning of the act? A fixture is defined to be an article which was a chattel, but which by being fixed to the realty becomes accessary to it and parcel of it. Its requisites are—1st, actual annexation to the realty, or something appurtenant thereto ; 2d, application to the use or purpose to which that part of the realty with which it is connected is appropriated ; and 3d, the

intention of the party making the annexation to make a permanent accession to the freehold. 1 *Ohio State R.* 511, *Truff* v. *Hewitt.*

This flume answers every idea of a fixture, and is consequently liable to the lien.

The next question made at the trial arose upon this question, put to one of the plaintiffs' witnesses, " Did you hear the defendant, Derrickson, say what the contract was ?" This was objected to by the defendants, and the objection overruled.

I see no objection to the question. Derrickson was himself one of the defendants, and his admissions are good evidence against himself.

When the plaintiffs rested, the defendants moved to dismiss the suit as against all the defendants, and also as against Seymour and Sage, for the following reasons :

1st. Because the lien claim is bad and void in claiming a lien on more land than is subject to any rightful lien of the plaintiffs. This certainly, even if true, was no ground for dismissing the suit as against Derrickson. Was it as against Seymour and Sage ? The question as to the amount due the plaintiffs, and what lands the debt is a lien on, are the very matters to be inquired of and settled by the jury on the trial.

I cannot say certainly, from the evidence in this cause, whether the claim did or did not include other lands than the lot on which this building was erected. It was a question for the jury, and not exclusively for the court. The court, therefore, could have committed no error in refusing to dismiss the suit on that account.

But again, even if it did certainly appear to the court that the claim included more land than by law could be covered by the lien, it was no reason for dismissing the suit. It should have gone to the jury to ascertain how much was covered by the lien, and judgment given accordingly. It might just as well be contended, if the judge should think that part of the account was not due,

that therefore he must nonsuit the plaintiffs. I see no error in the court refusing to nonsuit the plaintiffs, even if it appeared that the lien covered other lands than the lot on which the building was erected. The jury was the proper tribunal to settle that question under proper instructions from the court, and to find by their verdict what lands, if any, were properly covered by the lien.

The defendants moved to nonsuit the plaintiffs as to Seymour and Sage, in the second place, because Seymour and Sage were improperly joined in the action.

The work was done on the 25th of February, 1857; the lien was filed on the 31st day of December, 1857; Derrickson conveyed the property to Seymour and Sage on the 6th of July, 1857, and this suit commenced on the 16th of January, 1858; so that at the time that the work was done, but not at the time the lien was filed, Derrickson was both owner and builder. Seymour and Sage became the owners, by purchase from Derrickson, between the commencement of the building and the filing of the lien.

The lien, as filed, states that Seymour and Sage own the land and the estate therein in fee simple. The error assigned is, that the court did not dismiss the suit as against Seymour and Sage because they were improperly joined in the action.

The cause was at issue, and the defendants, Seymour and Sage, pleaded that the house and land were not liable to said debt.

The objection is, that Seymour and Sage were not proper parties to the suit, because although they were the owners when the lien was filed, and the lien was filed expressly against their estate, yet that they were not owners when the building was commenced, and that, therefore, the suit should be dismissed as to them.

But this court decided, in *Cornell* v. *Malthews*, 3 *Dutcher* 526, that "it was immaterial, upon the trial upon the plea pleaded, whether the defendant had any, and if any

what, interest in the premises." Upon the principle of this decision, it was an immaterial question whether Seymour and Sage had any interest in the land at any time; and consequently they could not set up the defence that somebody else owned the land when the building was commenced.

But it is further urged, that the statute (*Nix. Dig.* 489, § 9,) provides that, upon suit or plea filed by the alleged owner, it shall be necessary for the plaintiff to prove that the provisions of the act requisite to establish such lien have been complied with, and that the lien filed shall contain the name of the owner of the land, or of the estate therein, on which the lien is claimed—that this means only the name of the owners of the land or estate at the time of the commencement of the building, and not the owner when the lien was filed.

To this it appears to me several answers may be given.

In the first place, it is only bringing up in other words the point decided in the case of *Cornell* v. *Matthews.* In the next place, if the defendant was right, his objection to the court should have been to dismiss the suit because the statute had not been complied with, inasmuch as the lien was not filed against the owner when the building was commenced. It might be that Seymour and Sage were proper parties, and yet the statute not complied with in failing to file the claim against the owner when the building was commenced, and it was no error in the court declining to nonsuit on a point not taken.

But I apprehend, even if the point had been distinctly taken, that the provisions of the act could not be complied with without filing the lien against the estate of the owner when the building was commenced, yet that there is nothing in the objection; that here the filing of the lien against the estate of Seymour and Sage, was in strict accordance with both the letter and spirit of the statute. The act says the lien shall contain the name of the owner or owners of the land or of the estate therein on which

the lien is claimed. If the lien filed contains these requisites it complies with the provisions of the statute. This provision contains two ideas—first, the estate in the land on which the lien is claimed; second, the name of the owner of such estate. Here the lien filed does most distinctly state that the estate in the land on which the lien is claimed is a fee simple, and equally distinctly that the owners of such estate are Seymour and Sage. These are all the provisions required by the act. The lien does contain literally all that the statute requires. But it is contended that the statute requires that the lien can be filed only against the person who owned it at the time of the commencement of the building. The statute says no such thing. All the statute requires is that the plaintiff shall file his claim against the estate upon which he seeks to enforce it. If he seeks to enforce his lien against the estate of the person who owned the land when the building was commenced, he must file his claim against his and all subsequent estates, and then he cuts off all subsequent encumbrances if he makes all proper parties. If he is satisfied with the estate of the subsequent purchaser, he files his claim against his estate, the result being that the plaintiff can then sell under his lien the estate of all persons who have acquired an interest either at or after the commencement of the suit, but he can sell no estate against which he files no lien except those accruing after lien filed. So here, if the plaintiff had desired to sell under his lien the estate of Derrickson, and to cut off all subsequently acquired estates, all he had to do was to file his lien against their respective estates, and make them parties to the suit. If he was satisfied that Seymour and Sage, when he filed his lien, owned all the estate of Derrickson, he need only file his claim against that estate; but if he did so, he ran the risk of selling subject to any intermediate conveyances or encumbrances. If there were none, he gets the whole estate of Derrickson—if there were, he can only blame himself for his impru

dence in filing his claim against the estate of Seymour and Sage, and not also against the estate of Derrickson.

The proceeding under the mechanics' lien law is, in its very nature, partly a common law and partly a chancery proceeding. So far as relates to the debtor, it is a common law proceeding—so far as it relates to the enforcement of the lien, it is necessarily a chancery proceeding, and in the nature of a foreclosure of a mortgage. *Quoad hoc* the filing of the lien is a bill in chancery—the complainant makes all persons parties against whose estate he intends to enforce the lien of his mortgage. If he wishes to cut off all intermediate encumbrances he may make the original mortgagor and all intermediate encumbrancers and purchasers parties, and he only sells the estate of those against whom he seeks by his bill to enforce his lien. If the original mortgagor still owns the property in the condition it was when the mortgage was made, the bill only seeks to enforce its lien upon his estate. If he has conveyed it without warranty, and without encumbering it, the bill may be filed against the owner of the equity of redemption, and there is no necessity of making the original mortgagor a party.

So this statute gives to the plaintiff a right to file his lien, or bill in equity, if we choose to call it so, against the estate either of the original owner, or a subsequent purchaser or encumbrancer under him, and as in the case of the mortgagee in chancery, he sells only the estate of the person against whom he seeks by his lien claim to enforce his lien. But if he files his claim against the subsequent purchaser alone he can no more be turned out of court than the mortgagee who files his bill against the owner of an equity unencumbered by any subsequent act of the original mortgagor. A subsequent owner of the equity might as well move to have the bill dismissed against him because he is wrongfully joined in the action, as a subsequent owner of lands subject to lien, move to have the suit dismissed, as to him, because he is improperly

joined in the action. If the bill is filed against the one, or the lien against the other, they are both proper parties, and their estate, whatever it may be, is sold to satisfy the encumbrance. The materials furnished create the lien. The filing of the lien claim is in the nature of a bill in chancery, and every purchaser after the filing of the lien buys with notice of a *lis pendens.*

That this is the true construction of this statute appears as well from its letter as from its whole scope and spirit.

In the first place, the clause in question does not say the lien shall be filed against the owner when the debt accrued. On the contrary, its grammatical construction and fair meaning is that the lien may be filed against any estate in the lands, either at the time of the attaching of the lien or at any time afterwards before the lien is filed. That the plaintiff may claim his lien on any estate, and if he files his lien against the estate he claims to lay it on, and gives the names of the owners of the estate, he sells whatever that estate may be. The question is not whether the defendant has any estate in the lands, but whether the plaintiff claims that he has.

That the statute contemplates filing a claim against any subsequent owner is further manifest from its eleventh section. This provides that, upon a special *fieri facias,* the sheriff shall convey the estate in said lands which said owner had at, *or at any time after* the commencement of the building. This proves two things—first, that by the term owner, used in the second specification in the sixth section of the statute, is meant two descriptions of owners, *viz.* first, owners at the time the lien attached; and second, owners who had acquired estates subsequently, *viz.* between the attaching of the lien and the filing of the claim. The owner at the time of the attaching of the lien could acquire no subsequent estate, for he already had the fee; and when, therefore, the statute says the sheriff shall sell all the estate which the owner had at any time after

the attaching of the lien, it must mean an owner who had acquired his estate afterwards. The subsequent clauses of section eleven, which have been used as an argument to prove that the claim can be filed only against the first owner, will be found, upon examination, to apply equally to either owner.

But again, the ninth section of the act provides that the owner may have any defence or plea to the amount that might be had by the builder, and in addition, might plead that the lands are not liable to said debt; so that the owner may set up as a defence either that the plaintiff never had any account at all, or that it is too large, or that it has been paid in whole or in part, or that it never was a lien, or has ceased to be so. To what owner must this statute have intended to give these defences? The defendants say, only to the owner when the lien attached; the plaintiff says, to any owner against whom the claim is filed. Suppose the first owner dies before the lien is filed, cannot it be filed against his heirs, or must the plaintiff bring a corpse into court or lose his lien? It is manifest that the legislature did not intend that the plaintiff should lose his lien except by his own act, and not by the act either of Providence or of the adverse party; and yet to this alternative are we reduced if the only owner against whom the lien can be filed is the one who was such at the time of the attaching of the lien, and as is contended here, if any subsequent owner can have it dismissed as to him because he is improperly joined in the action.

Again, in ninety-nine cases out of a hundred the person who builds is both builder and owner, and the great evil at which the act was aimed was that the owner, before he paid would fail and assign or encumber, and the fundamental idea of the act was to follow with this lien the lands in the hands of subsequent purchasers. As long as the original owner was worth anything there was no occasion of the act, for a general judgment against him was as good as a special one against the lands, and the

great object of the act was to guard against his insol-vency. And yet it is contended that the only person against whose estate the lien can be filed, and who is con-sequently the only one who can defend the suit, is such insolvent owner who has parted with all his interest, and to whom it makes not a particle of difference how the suit should go, while the subsequent owner, who is the only person interested in the questions, cannot be heard, or even made a party. What pains is such insolvent owner going to take to defend the subsequent owner? What proof will he care to bring that the debt was never con-tracted, or was too large, or had been paid in whole or part, or was no lien, or the lien discharged?

All these questions are vital to the subsequent owner, but of no consequence to the first owner. Indeed the real party in interest has no security that he would not confess them all away. Can we deem the legislature to have designed so great an injustice as to make provisions for ascertaining by suit in court the rights of parties, and yet permitted no one who was interested in the questions to have a standing there, or to be heard therein, but only those who had no interest, the insolvent builder or the owner, who was either insolvent or had parted with his interest?

But again, such an attempt on the part of the legisla-ture would be as impotent as it would be unjust. If the first owner is the only one against whom the claim can be filed by the terms of the statute he is the only one who can be a defendant to the suit, and the rights of the sub-sequent purchasers and encumbrancers, if sold at all, must be sold under judicial proceedings to which they are not parties ; and as to them, it is well settled, upon principles of constitutional law, that such proceedings would be void, as much so as where the mortgagee makes only the original mortgagor a party to his bill, and not the subse-quent purchaser or encumbrancer. So that, by this con-struction of the term owner, the whole fundamental idea of

the act, which was to pursue the lien into whosever hands the estate passed, is entirely lost, and the whole law stands upon the statute book a mere inanity. If we consider this act as a proceeding only at common law, it is a discordant tissue of impossibilities; but if we consider it as contemplating proceedings partly according to the course of the common law, and partly according to proceedings in equity, as the nature of the interest affected demands, it immediately becomes a consistent and harmonious whole, effects the beneficent objects of the legislature, and justly protects all interests. Why should we not so treat it? The legislature certainly have the constitutional power to say that a court of common law may proceed according to equitable forms, and must be deemed so to have designed when their object can be reached in no other way. I am consequently of opinion that the plaintiffs complied with the provisions of the lien law, whether they filed their claim against both the first and the subsequent owners or whether they filed it only against the subsequent owner, and that the purchaser under it will hold the estate of Seymour and Sage, but subject to an encumbrance prior to their title, and that the court did nor err in refusing to dismiss the suit, as against them, on account of their being improperly joined in the action.

As to the question, whether the plaintiffs lost their lien by taking the notes under the circumstances they did, it is too well settled by the current of decisions to require argument that they are not. Nor do I see any reason why the $114 should not be deducted from the payments made by Derrickson.

Upon the whole case, I see no reason for setting aside this verdict, and think the circuit should be so advised.

CHIEF JUSTICE (dissenting). This cause was commenced in the Circuit Court of the County of Morris, to enforce a mechanic's lien against Derrickson, as builder, and Seymour and Sage, as owners of the premises. On the trial, a

F*

verdict was taken by consent for the amount of the plaintiffs' claim, with interest. All the questions of law that arose upon the trial are certified for the advisory opinion of this court.

Most of the questions certified arise upon the construction of the act of the eleventh of March, 1853, *Nixon's Dig.* 487. In the examination of these questions, much aid has been derived from the full and elaborate brief of the plaintiffs' counsel. The principles there insisted on as applicable to the construction of the statute cannot be controverted. The act in question, like every other remedial statute, is to receive not a strict, but a liberal construction. The intention of the legislature is to be ascertained and carried into effect, so far as it can be done consistently with sound and well settled rules of interpretation; at the same time care is to be taken lest, from a desire to effect any real or supposed beneficent purpose of the act, the court exceed the just bounds of interpretation, and legislate rather than interpret. The first lien law of the state, passed in 1820, was so anomalous in its character and so defective in its provisions that its efficient execution was found impracticable after years of experience. The opinion was early expressed, by the most eminent counsel at the bar, that its provisions never could be executed or rendered practically available except by the aid of a court of equity. The great difficult of carrying it into execution by fair judicial construction was felt and expressed upon the bench. *Sherer* v. *Nichols*, 1 *Harr.* 184. And the court, in the construction both of the former and present law, have been constantly pressed with the necessity of either defeating the design of the act or of extending the rules of construction beyond their legitimate limits. The duty of the court, in regard to this and all similar acts of legislation, is clearly to carry into effect the intention of the legislature, and to execute the provisions of the law, as far as it is practicable, by sound interpretation without judicial legislation. The law is to

be beneficially and liberally construed, not argumentatively extended.

Upon these principles, the questions certified for the opinion of this court are to be considered and answered.

1. Had the plaintiffs a right to appropriate the payment made by Derrickson to the first items of their account, which had lost their lien by lapse of time?

The general rule, acknowledged in all the cases, is that where the debtor, owing several debts to the same creditor, omits to apply the payment, at or before the time of making it, the creditor may make the appropriation. *Smith* v. *Wood, Saxton* 80; *White* v. *Trumbull,* 3 *Green* 314; *Mayor, &c.,* v. *Patten,* 4 *Cranch* 320; 1 *Amer. Leading Cases* (1st *ed.*) 141. The right of appropriation is not taken away or impaired by any express provision of the lien law, nor by the effect of the appropriation upon the interests of the land owner.

2. Were the declarations of Derrickson, the builder, competent to prove what the building contract between himself and the plaintiffs was?

Derrickson is a party to the record. The action is brought against the builder and the owner of the land. It has a twofold purpose—to recover judgment for the debt against the builder, and to enforce the lien against the land and building. The pleadings put in issue the existence of the debt and the validity of the lien. As against the builder, his declarations are clearly competent. The court were called upon to reject, not to apply the evidence. In the case of *Dickinson College* v. *Church,* 1 *Watts & Serg.* 465, it was held, by the Supreme Court of Pennsylvania, that in a proceeding by *scire facias* under the statute of that state against the owner and contractor, for the sole purpose of enforcing the lien against the land, that the declarations of the contractor as to the amount of indebtedness were admissible in evidence.

The declarations of Derrickson were admissible upon another ground. At the time they were made he was

the owner of the land upon which the lien attached. It was in fact an admission by the owner of the land of the existence of a contract which became, in its execution, an encumbrance upon the land before it passed into the hands of the defendants.

3. Is the lien impaired because it appears in evidence that a part of the labor was done and a part of the materials furnished more than a year before the filing of the lien claim?

Under the provisions of the lien law of 1846, it was held, that if the claim was filed within six months after the date of the last item, in a continuous bill for work done or materials furnished, the lien was valid for the whole bill. The 12th section of the existing law prohibits this construction, by requiring that "such part of any claim filed as may be for work or materials furnished more than one year before the filing of the same, shall not be recovered against the building or land by virtue of this act." The provision seems not to be applicable where the work is done by contract. The contract is an entirety. The work cannot be said to be done, nor the materials furnished, until the contract is executed. This is certainly true where the entire contract price is payable at the conclusion of the work. In such case no lien can be filed until the contract is completed and the debt due. And even where the money is payable by instalments, as in the case now under consideration, it will be found difficult to apply the provisions of the 12th section. Where the payment of the instalments are made to depend upon the amount of work done and materials furnished, and are apportioned to the value of such work and materials, the claim might show what part was furnished more than a year before the filing of the claim. But where the instalments are payable at fixed times, without any reference to the amount of work or materials furnished, the amount of the instalment furnishes no evidence of the amount of work or materials furnished. If the whole

contract price were payable in advance the lien need not be filed till the contract is complete. But if it be admitted that, by the true construction of the 12th section, it ,does apply to contract work payable by instalments, the right of the plaintiffs' lien is not impaired. The amount of the instalment payable during the progress of the work is more than satisfied by the payments made. The amount claimed by way of lien is less than the sum due and payable upon the completion of the work.

4. Is the claim invalid because it does not state with sufficient particularity the time and times of doing the work and furnishing the materials ?

The bill of particulars states the claim as follows : " February 25, 1857, to building water wheel, flume, and breast shaft, and furnishing materials (except the water wheel shaft), done by special contract for four thousand dollars, the said Edwards and Clark to have the old wheel, and Derrickson to find the new water wheel and shaft, $4000."

The act provides that the " statement, when the work or materials, or both, are furnished by contract, need not state the particulars of such labor or materials further than by stating generally that certain work therein stated was done by contract at a price mentioned." *Nixon's Dig.* 488, § 6, *Art. IV.* The claim itself, and the oath of the claimant by which it is verified, are in strict compliance with the requirements of the statute. The work done, the time it was executed, that it was done by contract, and the price stipulated, are all clearly stated in the claim and accompanying affidavit.

5. Does the claim for work and materials furnished in the construction of the flume of the mill constitute a lien within the purview of the act? The flume, by which the water is conveyed upon the wheel, may be, and often is principally within the building, is connected with it, and constitutes as much a part of the mill as the wheel itself ; it is sometimes, when the wheel is outside of the build-

ing, totally disconnected with the mill, and strictly is no more a part of the mill than an ordinary raceway which conducts the water from the dam to the building. Whether, in the latter case, the work and materials for its construction would constitute a lien, may perhaps be doubted. It would seem to be no more a part of the mill than the dam or a raceway, for which it may be a mere substitute. In *Sherer and Nichols* v. *Collins*, 2 *Harr.* 183, Chief Justice Hornblower said, " if the mill and race were all one entire erection, and put up at the same time, I do not see why, upon a liberal construction of the statute, considering it as a remedial one, the mill and lands should not be bound for excavating and walling up the raceway, as a part and parcel of the mill. But upon this point I do not give any definite opinion." In the present case the flume is described, by a witness, as being from sixty to one hundred feet in length, of wood, about six feet wide and four feet high, framed and open, without a top. The wheel is within the mill. The flume runs into the mill, but all of it, except a few feet, is outside of the mill. This description of the structure brings the claim for its erection clearly within the spirit of the act and within the letter of the fifth section, by which it is enacted, that any addition erected to a former building, and any fixed machinery or gearing, or other fixtures for manufacturing purposes, shall be considered a building for the purposes of this act.

6. Is the lien void by reason of the claim including more land in its description than is properly the subject of the lien ?

The act declares that the claim for labor performed and materials furnished for the erection and construction of a building " shall be alien on such building, and on the land whereon it stands, including the lot or curtilage whereon the same is erected." The claim filed is to contain " a description of the building, and of the lot and curtilage upon which the lien is claimed, and of its situa-

tion, sufficient to indentify the same." The claim filed in this case describes the building and lot as the Phœnix mill, together with the lot and curtilage whereon the same stands, which is designated as " all that tract of land known as the Phœnix mill property," and is described by metes and bounds. The precise number of acres contained in the tract is not stated. It appears, by the evidence, that besides the mill, there are two dwellings upon the tract ; that there are seven or eight acres of enclosed land, upon which one of the houses stands. Both houses are usually occupied by persons employed about the mill. The residue of the land is unenclosed, and is described by the witness as chiefly open, broken, back land. For thirty years it has been known as one tract, and within that time has not been sold with a greater or less tract of land than that described in the lien claim. Whether the tract contains twenty or two hundred acres does not appear, nor is it material to the present inquiry.

In order to sustain the lien to the extent of the claim, it is necessary for the plaintiffs to establish the principle, that the lien upon the building covers the entire tract upon which it is erected, and which has been usually conveyed and occupied with it. For this position the plaintiffs contend, and cite, in its support, the decision of the Chancellor in the case of the *Executors of Van Duyne* v. *Vannest*, 1 *Halst. Ch. R.* 485. The lien in that case was filed under the provisions of the act of March 3d, 1835, *Pamph. L.* 148, which are identical with those of the act of 1846 (*Rev. St.* 742). That act declares the debt to be a lien upon the *building*, and requires the claim filed to designate the *building*, without reference to the land. But it directs that the execution shall issue against the building, " and land upon which the same is erected." The Chancellor held that, upon the construction of that act, the land upon which the building was erected must be construed to mean the tract on which the building stands. This con-

struction is founded entirely upon the language of the second section of the act in regard to the execution.   The first section, giving the lien, is a substantial copy of the Pennsylvania act of 1806, under which it has been uniformly held that the lien does not cover the house alone, nor the whole tract, but only so much as is necessary to the convenient enjoyment of the building.   *Sergeants Lien Law* (2d ed.) 317, 135.   This is believed to have been the construction given in practice to our act of 1835.   But with the view of relieving all questions upon this point, the existing law declares that the debt shall be a lien " on the building, and on the land whereon it stands, including the lot and curtilage whereon the same is erected."   And it requires that the claim shall contain a description of the building and of the lot or curtilage upon which the lien is claimed.   The term lot serves ordinarily to designate with sufficient certainty the extent of a lien upon a town lot, but will not designate with sufficient precision the extent of ground designed to be included in a lien upon a farm-house. The legislature have therefore superadded the term " *curtilage*," which is a familiar phrase in the law, and has a well defined legal meaning, both in the administration of civil and criminal law.   It is defined to be the court-yard or piece of ground within the common enclosure belonging to a dwelling house.   It is annexed to, and enjoyed with the house for its more convenient occupation.   It is parcel of the house, and passes by the grant of the house.   14 *Viner's Ab.*, *House* " *E ;*" 1 *Sheppard's Touchst.* 94 ; *Jacobs' Law Dic.*, "*Curtilage ;*" *Bouvier's Law. Dic.*, " *Curtilage.*"

So the crime of burglary, at common law, can only be committed in a mansion or dwelling house.   But if the offence be committed in a stable, warehouse, or other outhouse within the curtilage, the crime is burglary ; for the mansion house protects and privileges all its branches and appurtenances, if within the curtilage or homestall. 1 *Hale P. C.* 558 ; 4 *Bla. Com.* 225 ; *Rex* v. *Clayburn,* 1

*Russ. & Ryan* 360. And although the legislature, in the supplement of 1855, have applied the term to mills and manufactories, to which it is not strictly appropriate, still the use of the term sufficiently indicates the intent of the legislature and the purpose of the act. The primary purpose of the act is to give to the mechanic and material man a lien for his debt upon the building the product of his labor and materials. But because some land is necessary to the enjoyment of the building, without which it would be of little value, the act also gives a lien upon so much land as is essential to the convenient enjoyment of the building. To extend this curtilage or lot to the entire tract upon which the building may be erected, whether it consists of twenty or two thousand acres; to extend it over an entire farm, or over other mills or dwellings, or over an entire manufacturing village, if within the limits of the original mill tract, would contravene the plain import of the act, and defeat its obvious design and policy. Upon such construction the lien upon a large manufactory might defeat the liens of those whose labor and materials contributed to the erection of all other buildings within the limits of the tract, The lien holder would have a lien, not only upon his own material and the products of his own industry, but upon the material and industry of others equally meritorious with himself. The lot of curtilage claimed by the lien holder should be limited to so much land as is necessary to the convenient and beneficial enjoyment of the mill.

But because the land described in the claim and in the declaration is larger than is authorized by law, the lien, so far as it lawfully extends, is not therefore rendered invalid. There is nothing in the act which justifies such conclusion. How the proper limits of the curtilage or lot covered by the lien are to be ascertained, is a question of some difficulty. It is obvious that this court has in the present case no means of deciding it. It will vary with the location and character of the mill, with the nature

and extent of the business pursued in it, and with other considerations which the court have no means of ascertaining. It may be that further legislation will be necessary in order to effect that object. After an experience of thirty years with a lien law very similar to our own, the legislature of Pennsylvania found it necessary to make special provision by law for ascertaining the quantity and boundaries of the land covered by the lien act of 16th June, 1836, *Pamph. L.* 675 ; *Sergeant's Mech. Lien Law* 330. · The remarks upon the bill, to be found in *Sergeant* 330, *note* 1, indicate clearly the serious, if not insuperable difficulties which must attend the execution of our law without further legislation. Without attempting to suggest how the limits of the lot are to be ascertained, it is clear that it must be done before the plaintiffs are entitled to judgment or an execution to enforce their claim.

The only remaining inquiry is, were the defendants, Seymour and Sage, improperly joined in the action? At the time the work was done and the materials furnished the title to the land was in Derrickson, who contracted the debt, and who, in the language of the statute, was owner and builder. After the work was completed, he conveyed to Seymour and Sage, who were owners in fee · at the time the lien was filed and at the time the action was commenced. They were undoubtedly proper parties to the action, if they were rightly described as owners in the claim filed in the clerk's office. The act requires that the claim filed shall contain, among other things, the name of the owner or owners of the land, or of the estate therein, on which the lien is claimed. *Nix. Dig.* 487, § 6. Who is intended by the statute, the owner at the time the building is erected, or the owner at the time the lien is filed? There is nothing in the language of the section itself to indicate clearly which is intended. Standing alone, the natural import of the language would seem to indicate the owner at the time the lien is filed. The question is one of great practical importance, upon which

there is not only a diversity of sentiment among the profession but a diversity of practice. Cases are now pending in the courts of this state in which contrary courses have been adopted, and both are excepted to as illegal. The true construction of the act may be most satisfactorily ascertained by adverting to the design of the legislature in making the requirement. It is obvious, from the seventh section of the act, that one great design of the requirements of the sixth section was to give notice to third parties of the existence of the lien, its amount, the lands encumbered, and the person whose estate was encumbered. If, then, the lien attached at the time of filing the claim, and upon the estate of the *then owner*, it would be obvious that he was the person indicated as *owner*. But filing the claim does not create the lien any more than registering a mortgage creates the encumbrance. The statute (§ 1) declares that the debt contracted for labor performed or materials furnished for the construction of the building shall constitute the lien. The lien attaches and becomes a valid subsisting encumbrance *at the time of the commencement of the building*, and upon the estate of *the then owner*. To insert, then, in the claim filed the name of a person as owner who was not the owner at the time of the creation of the encumbrance, and not the person upon whose estate the encumbrance originally attaches, would be to defeat the very object of filing the claim, and to mislead third persons as to the origin and nature of the encumbrance. That this is the true nature of the encumbrance is apparent from the subsequent provisions of the statute. It requires that the suit to enforce the claim shall be against the builder and the owner of the land and building; that if the judgment be against the building and lands, a special writ of *fieri facias* shall issue, under which the building and lands shall be advertised and sold; and the deed given by the sheriff or other officer shall convey to the purchaser said building, free from any former en-

cumbrance on the lands, and shall convey the estate in said lands, which said owner had at or any time after the commencement of the building, within one year before the filing such claim in the clerk's office, subject to all prior encumbrances, and free from all encumbrance or estates created by or obtained against such owner afterwards, and from all estates and encumbrances created by deed or mortgage made by such owner, or any claiming under him, and not recorded or registered in the clerk's office of the county at the commencement of said building. Nix. Dig. 489, § 11. The section is treating of the title conveyed under the execution issued upon a judgment recovered against the owner and builder. It declares it shall convey the estate in the lands which said owner had at or any time after the commencement of the building, subject to prior encumbrances and free from all subsequent estates and encumbrances and from all estates and encumbrance by deed or mortgage made by such owner, or any claiming under him, and not recovered or registered at the commencement of said building. This language renders it very clear not only that the lien attaches at the commencement of the building upon the estate of the then owner, but also that the said owner against whom the suit is commenced, and who is to be specified in the claim filed, is the owner at the time the building is erected. In contemplation of law Derrickson, in this case, was both builder and owner. The lien attached upon his estate at the time of the commencement of the building and prior to the estate conveyed by Derrickson to Seymour and Sage. It not only takes priority of that conveyance, but of all prior estates or encumbrances created by Derrickson after the commencement of the building. And yet a deed executed under a fieri facias issued upon a judgment rendered in this cause against Seymour and Sage, as the owners, would vest in the purchaser not the title of Derrickson, but the title of Seymour and Sage, and subject to all encumbrances which may have been created by

Derrickson at any time while he retained the title. Such construction will conflict with the express provisions of the statute, and deprive the lien holder of the protection which the act was designed to give him.

And how, it may be asked, is the claimant to ascertain who is the legal owner at the time of filing the claim. It may be presumed that the owner of the land upon which a building is being erected may be publicly known or readily ascertained. But how is the claimant to be apprized of any transfer of title? The ownership does not depend upon the fact of the deed being recorded. And may the security of the lien be entirely defeated by a transfer of title before the claim is filed? Experience has already shown that this difficulty is not an imaginary one, and if the claim must state the name of the true owner at the time it is filed, a transfer of the property unrecorded will effectually defeat the validity of the lien. It is urged that the phrases " any land owner" and " said land owner," in the fifteenth section, clearly apply to the existing owner. This may be admitted without at all affecting the construction of the language of the sixth section. It merely proves that the same phrase is used in different senses in different parts of the act. But in this connection it is worthy of special notice that the phrases " any land owner," in the 13th section, and "the owner of the *land or buildings*," in the 12th section, seem to have been designedly used in contradistinction from the term " said land owner," in the 12th section.

It is further urged that the design of making the land owner a party to the suit, is that he may have an opportunity of defending his title. And why make one a party who has disposed of his interest? The argument is certainly entitled to consideration. It may, perhaps, be answered, that the creation of the lien by the erection of a building is so open and notorious an encumbrance that the purchaser must be presumed to have had notice of the encumbrance, and to have taken title with covenants of

G*

warranty, in which case the original owner would be the real party in interest. But giving to the suggestion all the weight to which it is entitled it proves too much.

The same difficulty would exist if the owner named in the lien filed should subsequently convey the land before the commencement of the suit. There is in fact no mode provided by the act in which all the parties interested can be brought before the court, as in a case in equity. The owner of the legal estate is alone to be made a party, and the only question is, whether, in contemplation of the statute, it is the owner upon whose estate the lien attaches or the owner to whom the legal title is subsequently transferred.

The mere fact that Seymour and Sage are improperly joined in the action will not in itself defeat the validity of the lien or the plaintiffs' right of recovery. No recovery is sought against them. They are made parties simply for the purpose of defending the title. The proceeding is for the purpose of enforcing the lien. The judgment is against the land, not against the person of the owner. The real owner is before the court. Derrickson, in contemplation of the statute, is owner and builder. It is true, the proceeding in the action is not technically in strict accordance with the forms prescribed by the statute. Derrickson is not described as owner. But for the purpose of effecting the design of the statute, the form may be disregarded when the substance is preserved and no right impaired. If the whole difficulty consisted in the mere form of the proceeding to enforce the lien, the lien itself being valid, and the proper party before the court, I should have no difficulty in sustaining the proceeding.

But the more important question is, is the lien itself valid? Did it properly describe Seymour and Sage as owners, and if not, is the lien nevertheless valid? As has been said, the principal design of filing the claim was to give notice to third parties of the existence of the encumbrance. The act requires that the claim shall contain

a description of the building and land, the name of the owner, the name of the builder, and the amount of the lien. All these particulars are to be recorded in the lien docket as information to third parties. It is further enacted, that when such claim shall not be filed in the manner or within the time prescribed by the act, the building or lands shall be free from all lien for the matters in such claim. If the construction above given to the act be the true one, this lien is not filed in the manner prescribed by the act. It does not contain the name of the owner, and consequently, by the terms of the act, the building and lands are free from the lien.

I have come to this conclusion with reluctance, inasmuch as the plaintiffs' claim is defeated not from any *laches* on his part, but from a mistaken construction of a provision in the statute, which is of doubtful import and admits of different interpretations.

AFFIRMED 5 *Dutch.* 468; CITED *in Coddington* v. *Hudson Co. Dry Dock Co.*, 2 *Vr.* 488; *Robins* v. *Bunn*, 5 *Vr.* 323; *Gordon* v. *Torrey*, 2 *McCar.* 114; *Tompkins* v. *Horton*, 10 *C. E. Gr.* 288 ; *James R. Dey, in re*, 9 *Blatch.* 292; *Browne & Ten Eyck, in re*, 12 *B. R.* 530,